

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00325-CV

———————————————

PHARUS FUNDING LLC AS ASSIGNEE OF LHR, INC., Appellant

V.

SHERI L. SUSON, Appellee

---

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2006-043006-3

---

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In a single issue, Appellant Pharus Funding LLC, as assignee of LHR, Inc., appeals the trial court's order vacating and quashing its previously granted application for writ of scire facias to revive a dormant default judgment against Appellee Sheri L. Suson. We affirm.

## II. BACKGROUND

We have set out below a chronology of this case's events.

### A. October 19, 2006

LHR, Inc. sued Suson for $6,202.51 in credit card debt and prevailed in a default judgment entered on October 19, 2006. The trial court also assessed prejudgment interest of 6% (December 29, 2003–October 19, 2006); postjudgment interest of 6% thereafter until paid; and $1,500 in attorney's fees and court costs bearing 8.25% interest from October 19, 2006 until paid.

The default judgment listed an Azle address for Suson. According to Suson, she moved from the Azle address (a rental property) in 2009[1] and bought a house in 2013 with no knowledge of the 2006 judgment against her.[2]

---

[1]Suson stated in her unsworn declaration that she had never owned the Azle property, and she attached a copy of the Tarrant County Appraisal District's owner information supporting this assertion. She also attached a copy of LHR, Inc.'s 2006 motion for substituted service; the affidavit in which the process server stated that the Tarrant County Appraisal District stated that she owned the Azle property; and the

The judgment became dormant on October 19, 2016. *See* Tex. Civ. Prac. & Rem. Code Ann. § 34.001(a) (providing that if a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or justice court, the judgment is dormant and execution may not be issued on it unless it is revived). Accordingly, the judgment's expiration date, if it were not revived, would be October 19, 2018. *See id.* § 31.006 (stating that a dormant judgment may be revived by scire facias or by an action on debt brought no later than the second anniversary of the date that the judgment becomes dormant).

## B. October 20, 2016–May 23, 2018

On May 23, 2018, approximately five months before the dormant judgment's expiration date, Pharus filed an application for writ of scire facias to revive it, asserting that the dormant judgment had not been satisfied. *See id.* Pharus sought $8,747.59—not $6,202.51—as the "Amount of Judgment."[3] The application's certificate of service states that it was sent to Suson at the Azle address listed in the 2006 judgment

---

trial court's August 22, 2006 order granting substituted service. Suson stated that she was never served and did not learn about the default judgment until June 2020.

[2]Suson married in May 2015 and changed her last name to Winkler. To avoid confusion, we will continue to refer to Suson by her maiden name.

[3]Pharus listed 6% as the pre- and postjudgment interest rates but no amount for the attorney's fees or costs awarded in the 2006 judgment. It is unclear to us how Pharus reached the $8,747.59 amount it sought in its application for writ of scire facias.

by "certified U.S. mail, return receipt requested" on May 15, 2018. The record does not contain the receipt showing service or the certified mail tracking number.

Pharus attached to the application a copy of LHR, Inc.'s 2006 default judgment against Suson, but this copy, which was stamped "conform and return," although it otherwise matched the October 19, 2006 judgment contained elsewhere in the record, showed different handwriting for the written-in portions (amount of attorney's fees and date) and the judge's signature appears to be a stamp.[4]

On the same day that it filed its application, Pharus also filed a notice of assignment of judgment. The notice stated that LHR, Inc. had assigned its interests in the judgment to Millenium Financial Group, L.L.C., which had then assigned its interests in the judgment to Pharus.

## C. May 24, 2018–July 7, 2020

On June 9, 2020, Pharus filed a notice of change in ownership and designation of new lead counsel, informing the trial court that the 2006 judgment had been assigned to it and that it was now represented by a different law firm from that which had originally filed the application. Pharus included as exhibits to the notice: (1) a copy of the assignment agreement between LHR, Inc. and Millenium Financial Group, L.L.C., which was made effective on November 26, 2012, but signed

---

[4]No explanation has been provided for the discrepancy, but the credit card account number, amount of damages, and attorney's fees are the same in each version.

January 4, 2013; and (2) a copy of the transfer and assignment agreement between Millenium Financial Group, L.L.C. and Pharus, which was made effective on June 1, 2017, but signed June 8, 2017. The notice's certificate of service states that Suson was served with the notice by first class mail on June 8, 2020, at the same Azle address listed in the scire-facias application's certificate of service.

On July 7, 2020, Pharus filed its notice of hearing on its application to revive judgment. According to the certificate of service included in the notice, Suson was served with the notice on June 30, 2020, via certified mail, return receipt requested, sent to a Richland Hills address. The certificate of service includes a certified mail tracking number.

## D. July 8, 2020–September 18, 2020

On July 16, 2020, over two years after Pharus filed its application, the trial court held a hearing on the application. Suson represented herself pro se at the hearing.

Pharus's counsel began by explaining that "the prior law firm filed an application for writ of scire facias on May 23rd of 2018," and that upon reviewing the file after entering an appearance, "it was apparent that the application was never presented to the Court to get an order to get the writ of scire facias delivered and served on the defendant[]." He then argued that because the application had been timely filed, "the writ of scire facias . . . should be issued and served on the defendant[] so judgment can be formally revived."

Suson replied that until June 2020, she had been unaware of the 2006 judgment or the scire-facias proceedings.[5] She asked for a continuance so that she could hire counsel. The trial court granted Pharus's application but urged Suson to hire counsel. The writ issued on July 28, 2020, and was executed two days later.

Suson filed a motion for reconsideration in which she argued that Pharus had failed to timely serve her with the application and that the trial court had not granted the application "until almost another twenty months after [the] two-year deadline had passed." Suson complained that the trial court should not have granted Pharus's application because the writ was not issued before the second anniversary of the date that the judgment became dormant and because Pharus had failed to diligently prosecute its application for over two years after it was filed. To her motion, Suson attached her unsworn declaration in which she stated that she did not receive Pharus's application for writ of scire facias until June 2020. Pharus did not file a response or otherwise show that it had actually served Suson with the application prior to June 2020. *See generally* Tex. R. Civ. P. 21a(e) (stating that a certificate of service "shall be prima facie evidence of the fact of service" but that nothing precludes a party from offering proof that the document was not received); *In re E.A.*, 287 S.W.3d 1, 5 (Tex. 2009) ("The presumption of service under Rule 21a 'is not "evidence" and it vanishes

---

[5]Suson stated, "I just became aware of the original judgment from 2006 when I received the letter dated June 26th of this year." The record does not contain a copy of the June 26, 2020 letter.

when opposing evidence is introduced that [a document] was not received.'" (quoting *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987)).

At the hearing on Suson's motion, Suson's counsel argued that while Pharus had filed the application within the two-year period, no further activity in the case had occurred until "20 months after the expiration" of the two-year period, demonstrating that Pharus had not diligently prosecuted the case. The trial court also referenced the exercise of diligence and stated, "It's not simply that you get to file the writ and then wait forever to do something on it."[6] The trial court granted Suson's motion, vacated its earlier order "in the interest of justice and fairness," quashed the issuance of the earlier writ, denied Pharus's application, and dismissed Pharus's application with prejudice. Pharus then appealed.

## III. DISCUSSION

In its single issue, Pharus argues that it met the statutory requirements to obtain a writ of scire facias and complains that Section 31.006 contains no procedural guide to litigants "to ascertain the parameters by which" scire facias may be obtained. Suson responds that the trial court did not abuse its discretion by denying Pharus's application when the record is "devoid of the kind of diligence that would ordinarily merit the tolling of the limitations period" and Pharus "failed to prosecute the

---

[6]During the hearing, the trial court mentioned a CLE article by Michael J. Scott. Pharus included a copy of that article in the appendix of its appellate brief. *See* Michael J. Scott, *Renewal and Revival of Judgments*, State Bar of Tex. Prof. Dev. Program, Collections and Creditors' Rights Course 13 (2006).

application for more than twenty months after the applicable limitations period had expired."

As explained in detail below, we agree with Suson. Pharus was required to exercise diligence in pursuing its remedies with respect to the dormant judgment. Because the record instead shows a decided lack of diligence, the trial court was within its rights to vacate the writ.

## A. Scire-Facias Procedure to Revive Dormant Judgments

Civil Practice and Remedies Code Section 34.001(a) provides that if a writ of execution is not issued within 10 years after the rendition of a judgment, the judgment becomes dormant, and execution may not be issued on it unless the judgment is revived. Tex. Civ. Prac. & Rem. Code Ann. § 34.001(a); *Keith M. Jensen, P.C. v. Briggs*, No. 02-14-00096-CV, 2015 WL 1407357, at *2 (Tex. App.—Fort Worth Mar. 26, 2015, no pet.) (mem. op.). A dormant judgment "is one which has not been satisfied or extinguished by lapse of time, but which has remained so long unexecuted that execution cannot now be issued upon it without first reviving the judgment." *Raymond K. Oukrop, DDS, P.C. v. Tatsch*, No. 03-12-00721-CV, 2014 WL 3734192, at *3 (Tex. App.—Austin July 23, 2014, no pet.) (mem. op.).

A dormant judgment "may be revived by scire facias or by an action on debt brought no later than the second anniversary of the date that the judgment becomes dormant." Tex. Civ. Prac. & Rem. Code Ann. § 31.006; *Tatsch*, 2014 WL 3734192, at *3. "Scire facias" refers both to a judicial writ based on some matter of record—such

as a judgment—and to a proceeding in which the person against whom it is brought must "show cause why the party bringing it should not have advantage of such record." *Pharus Funding, LLC v. Garcia*, No. 01-20-00411-CV, 2021 WL 3556679, at *1 n.4 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, no pet. h.) (mem. op.); *see* Tex. R. Civ. P. 151–152, 154 (identifying circumstances under which scire facias may issue and its requisites); *see also* Tex. Code Crim. Proc. Ann. art. 22.05 (addressing scire facias as to bail bond sureties and requiring "[c]itation as in [c]ivil [a]ctions"); 66 Tex. Jur. 3d Scire Facias § 1 ("The purpose of the writ is to give notice to the defendant of an application for an award or execution.").

"The scire facias and returns thereon, provided for in this section, *shall conform to the requisites of citations and returns thereon, under the provisions of these rules.*" Tex. R. Civ. P. 154 (emphasis added); *Garcia*, 2021 WL 3556679, at *2 (listing Tex. R. Civ. P. 15–17 as procedures applicable to all writs and process); *see also Ross v. Am. Radiator & Standard Sanitary Corp.*, 507 S.W.2d 806, 809 (Tex. App.—Dallas 1974, writ ref'd n.r.e.) ("The mere presentation of a petition to the clerk for filing is not sufficient to interrupt or toll the statute of limitations; there must follow a diligent effort to secure issuance [a]nd service of citation." (citing *Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex. 1970)). As stated in the CLE article included in Pharus's appellate appendix, "Plaintiff must serve the defendant with citation and a copy of the motion to revive judgment by scire facias, and demonstrate such service through a return of service filed with the court." Scott, *supra* n.6 at 10 (referencing Rule of Civil Procedure 154).

9

We review de novo the trial court's decision on an application for a writ of scire facias. *Garcia*, 2021 WL 3556679, at *2.

## B. Relevant Case Law

A review of very recent case law shows us that, colloquially speaking, this is not Pharus's first scire-facias rodeo. *See id.* at *1; *see also Pharus Funding LLC as Assignee of LHR, Inc. v. Baker*, No. 14-21-00338-CV, 2021 WL 3628981, at *1 (Tex. App.—Houston [14th Dist.] Aug. 17, 2021, no pet. h.) (mem. op.) (dismissing for want of jurisdiction based on untimely notice of appeal); *Pharus Funding, LLC v. Solley*, No. 06-20-00090-CV, 2021 WL 1680206, at *1 (Tex. App.—Texarkana Apr. 29, 2021, no pet.) (mem. op.).

In *Solley*, before dismissing Pharus's appeal for want of jurisdiction because the record showed no final appealable judgment, our sister court set out the scire-facias procedural steps as follows:

> First, the judgment creditor files an application to revive the dormant judgment, obtaining the issuance of a writ of scire facias requiring the judgment debtors to appear and show cause why the judgment should not be revived, and obtaining service of the writ on the judgment debtors as required for all writs and process. After the judgment debtor has answered, or after the time for filing an answer has expired, the creditor may set a hearing on its application to revive the dormant judgment and obtain an order reviving the judgment.

2021 WL 1680206, at *1, *3 (citations omitted). The court explained that the scire-facias proceeding ensures that the judgment debtor has proper notice of the judgment creditor's application to revive the dormant judgment. *Id.* at *1 n.3. Through the

10

requirement that the writ of scire facias be served in accordance with the Texas Rules of Civil Procedure governing the service of writs, the judgment debtor is ensured of receiving actual notice of the application as well as afforded the opportunity to assert any defenses it may have to the judgment's revival, such as payment. *Id. But cf.* Scott, *supra* n.6, at 10 (noting contrary authority in *Schluter v. Sell*, 194 S.W.2d 125, 130 (Tex. App.—Austin 1946, no writ)).[7]

In *Garcia*, the trial court denied Pharus's application for writ of scire facias based on Pharus's failure to follow the appropriate procedure. 2021 WL 3556679, at *2–3. Pharus had included a certificate of service in its application in which it stated that it had served Garcia "by certified U.S. mail, return receipt requested," on May 17, 2018, and—as in the instant case—it had attached a copy of a dormant judgment awarded to LHR, Inc., a notice of change in ownership, and assignment agreements. *Id.* at *1. After the trial court denied the application, Pharus argued on appeal that service of its application only had to comply with a method under Rule of Civil Procedure 21a. *Id.* at *2.

---

[7]In *Schluter*, the Austin court stated that a proceeding to obtain execution of a dormant judgment is not a new suit but "merely a proceeding or subsequent step to enforce a judgment wherein the defendant has already been cited and appeared, and reasonable notice is all that is required to support the judgment of revival or to enforce execution of the judgment." 194 S.W.2d at 130. We note that *Schluter*'s "reasonable notice" standard may have been implicitly overruled by the Austin court in *Cornejo v. Int'l Bank of Commerce*, No. 03-21-00019-CV, 2021 WL 4296416, at *1, *4 (Tex. App.—Austin Sept. 22, 2021, no pet. h.) (mem. op.), discussed below, in which the court addressed service of process in the scire-facias context.

Our sister court disagreed, observing that while Section 31.006 does not set out a procedure for obtaining the revival of a dormant judgment by scire facias, Rule of Civil Procedure 154 expressly requires conformance with the requisites of citations and returns in an application for writ of scire facias. *Id.* ("Pharus may not ignore its duty to comply with Texas Rule of Civil Procedure 154 simply because the procedure outlined in that rule is not reiterated in the statute."). The court held, "Because [R]ule 154 unambiguously applies to civil proceedings for writs of scire facias without limitation, we conclude that service of an application for a writ of scire facias for revival of a dormant judgment must comply with that rule." *Id.* at *3. On filing an application for a writ of scire facias, the applicant must ask the court clerk for issuance of citation, and the applicant is responsible for obtaining service of the citation. *Id.* (citing Tex. R. Civ. P. 99). Because Pharus had failed to do so, the court held that the trial court did not err by denying its application. *Id.*

The Austin court has likewise acknowledged conformity with the Rules of Civil Procedure regarding service of process in a scire-facias case. *See Cornejo*, 2021 WL 4296416, at *1. In *Cornejo*, the defendant admitted that the bank's scire-facias application was timely filed on April 3, 2020. *Id.* at *1, *5. The county clerk issued citation twenty-four days later, and in July 2020, the bank sought substituted service of process after its process server was unsuccessful in serving the defendant on May 23, May 28, June 2, and June 9. *Id.* at *2. The bank successfully served the defendant on August 20, at which point the defendant filed an answer claiming that

12

limitations had expired under Section 31.006 and complaining that the bank had failed to exercise diligence in attempting to serve him. *Id.*

The Austin court noted that the issue of diligence is determined by looking at whether a party's actions manifested a bona fide intention to have process served, whether a party has acted as an ordinarily prudent person would have acted under the same or similar circumstances, and whether a party has acted diligently up until the time the defendant was served. *Id.* at *4. It then concluded that the 42-day period between the process server's last failed attempt to serve the defendant with the scire-facias application and the bank's filing of the motion for substituted service and the 28-day period between the trial court's order authorizing substituted service and execution were not unreasonable delays because "[t]he mere fact that some time elapsed between service efforts" did not conclusively demonstrate that the bank was not exercising diligence in its efforts to locate and serve the defendant. *Id.*; *see also F.D.I.C. v. Davis*, No. CV H-92-3759, 2006 WL 8445383, at *2 (S.D. Tex. July 28, 2006) (requiring FDIC to show that it served defendant pursuant to Texas Rule of Civil Procedure 154 to revive judgment); *F.D.I.C. v. Bauman*, No. CIV. 3:90-CV-0614-H, 2004 WL 1732933, at *2 (N.D. Tex. July 30, 2004) (concluding that the court could not rule on the merits of the scire-facias motion because the plaintiff had failed to show that it had served the defendant pursuant to Texas Rule of Civil Procedure 154); *Bevers v. Brodbeck*, No. 07-04-0475-CV, 2006 WL 2795347, at *2 (Tex. App.—Amarillo Sept. 29, 2006, pet. denied) (mem. op.) (observing, in scire-facias suit involving

procedure on party's death, that "[n]otice of a suit is a fundamental component of due process to which all litigants are entitled" and that "[l]ike a citation, a scire facias brings a person before the court by giving her notice of the suit").

Pharus refers us to *Cadle Co. v. Rollins*, No. 01-09-00165-CV, 2010 WL 670561, at *1 (Tex. App.—Houston [1st Dist.] Feb. 25, 2010, no pet.) (mem. op.), to support its argument that the trial court erred by granting Suson's motion for reconsideration. In *Cadle*, the appellant challenged the trial court's order denying its motion for scire facias to revive a dormant judgment assigned to it by American Express. *Id.* The Houston court agreed with the appellant, reversed the trial court's order, and rendered judgment granting the scire-facias motion, thus reviving the dormant judgment. *Id.* The appellant in *Cadle* had previously attempted to collect on the 1985 judgment through five writs of execution issued and served in the case. *Id.* It attached the judgment and the writs to its 2008 motion and amended motion. *Id.* The appellee agreed that the underlying judgment had been preserved by the execution of writs, and the record reflected that the appellant had filed its motion and amended motion to revive the dormant judgment "well before the second anniversary of the date that the judgment became dormant." *Id.* at *1–2. The court rejected the appellee's attempts to construe Section 31.006 to allow the trial court to deny a motion based on equity, specifically the appellee's age and financial inability to pay the judgment. *Id.* at *2. The question of whether the appellant had diligently complied with Rule of Civil Procedure 154 was not addressed. *See id.* *1–3.

14

**C. Analysis**

Pharus states, "To hold that there is a due diligence requirement is wholly outside the text of the statute and imposes an additional arbitrary requirement that is not supported by the precedent." In light of the plain language of Rule of Civil Procedure 154, as construed above by some of our sister courts and two federal district courts, we disagree.

Pharus did not follow Rule 154's requirements. Instead, the record reflects that Pharus attempted to serve Suson under Rule 21a (and that it failed in that attempt). Pharus then took no other action between May 15, 2018, and June 30, 2020, when Suson was served with notice of the hearing on Pharus's application. Accordingly, the trial court correctly denied Pharus's application based on Pharus's clear lack of diligence (notwithstanding its additional utter failure to follow the procedures required by Rule of Civil Procedure 154). *Cf. id.* at *1.

## IV. CONCLUSION

Having overruled Pharus's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: October 14, 2021

15